**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

BMO HARRIS BANK N.A.,

                          Plaintiff,

    v.                              No. 23-cv-5587

BLACK    HORSE    TRANS    INC.,
GURINDERJIT SINGH

                          Defendants.

## COMPLAINT

NOW COMES Plaintiff, BMO HARRIS BANK N.A., by its attorneys, Daniel Rubin and Scott Frost of Howard & Howard Attorneys PLLC, and files this Complaint against Defendants, Black Horse Trans Inc. and Gurinderjit Singh, and states as follows:

### DESCRIPTION OF THE PARTIES

1. BMO Harris Bank N.A. ("BHB") is a national banking association with its headquarters and principal place of business in Chicago, Illinois. For purposes of establishing diversity of the parties, BHB is a citizen of the state of Illinois.

2. Black Horse Trans Inc. ("Black Horse") is a corporation incorporated in the state of California, and has its principal place of business at 14 Rembrandt Ct. in Oakley, California. For purposes of establishing diversity of the parties, Black Horse is a citizen of the state of California.

3. Gurinderjit Singh ("Singh") is a resident of Oakley, California. Specifically, Singh is domiciled and lives at 14 Rembrandt Ct. in Oakley, California. For purposes of establishing diversity of the parties, Singh is a citizen of the state of California. At all times stated in this Complaint, Singh was the owner and president of Black Horse.

## JURISDICTION AND VENUE

4.   Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.   Black Horse agreed in the contracts described below that any action brought pursuant to the contracts would be brought in courts sitting in Cook County, Illinois (Section 7.6 of the Contracts described below).

## FACTS COMMON TO ALL COUNTS

6.   BHB restates and by this reference incorporates the allegations of Paragraphs 1 through 5 as if fully stated herein.

### The September 9 Contract

7.   On or about September 9, 2020, Black Horse entered into a certain Loan and Security Agreement in the amount of $173,214.60 (the "September 9 Contract") with BHB to finance Black Horse's purchase of a certain 2021 Freightliner Cascadia VIN # 3AKJHHDR8MSMC4785 (the "September 9 Vehicle"). A true and correct copy of the September 9 Contract is attached to this Complaint and incorporated herein as "Exhibit A".

8.   Pursuant to the terms of September 9 Contract, BHB was granted a security interest in the September 9 Vehicle.

9.   In consideration of the promises contained in the September 9 Contract, BHB loaned $134,825.34 to Black Horse.

10.   BHB perfected its security interest in the September 9 Vehicle by having its lien noted on the title of said vehicle. A true and correct copy of the title to the September 9 Vehicle (or proof

4884-0167-7943, v. 1

of said titling provided by the appropriate titling agency) is attached to this Complaint and incorporated herein as "Exhibit B."

**The September 15 Contract**

11.     On or about September 15, 2020, Black Horse entered into a certain Loan and Security Agreement in the amount of $172,932.00 (the "September 15 Contract") with BHB to finance Black Horse's purchase of a 2021 Freightliner Cascadia VIN # 3AKJHHDR5MSMC2363 (the "September 15 Vehicle"). A true and correct copy of the September 15 Contract is attached to this Complaint and incorporated herein as "Exhibit C".

12.     Pursuant to the terms of September 15 Contract, BHB was granted a security interest in the September 15 Vehicle.

13.     In consideration of the promises contained in the September 15 Contract, BHB loaned $134,825.34 to Black Horse.

14.     BHB perfected its security interest in the September 15 Vehicle by having its lien noted on the title of said vehicle.  A true and correct copy of the title to the September 15 Vehicle (or proof of said titling provided by the appropriate titling agency) is attached to this Complaint and incorporated herein as "Exhibit D."

**The 2021 Contract**

15.     On or about June 8, 2021, Black Horse entered into a certain Loan and Security Agreement in the amount of $87,918.60 (the "2021 Contract") with BHB to finance Black Horse's purchase of (1) 2022 Hyundai Dry Van VIN 3H3V532KXNS018242 and (2) 2022 Hyundai Dry Van VIN 3H3V532K8NS018241 (the "2021 Vehicles"). A true and correct copy of the 2021 Contract is attached to this Complaint and incorporated herein as "Exhibit E".

4884-0167-7943, v. 1

16.     Pursuant to the terms of 2021 Contract, BHB was granted a security interest in the 2021 Vehicles.

17.     On or about June 8, 2021, Singh executed a document titled "Continuing Guaranty" dated June 8, 2021 (the "2021 Guaranty") whereby Singh guaranteed payment of all debts owed to BHB from Black Horse. A true and correct copy of the 2021 Guaranty is attached to this Complaint and incorporated herein as "Exhibit F".

18.     In consideration of the promises contained in the 2021 Contract and the 2021 Guaranty, BHB loaned $70,290.00 to Black Horse.

19.     BHB perfected its security interest in the 2021 Vehicles by having its lien noted on the title of said vehicles. True and correct copies of the titles to the 2021 Vehicles (or proof of said titling provided by the appropriate titling agency) is attached to this Complaint and incorporated herein as "Exhibit G."

### The 2022 Contract

20.     On or about February 28, 2022, Black Horse entered into a certain Loan and Security Agreement in the amount of $221,840.40 (the "2022 Contract") with BHB to finance Black Horse's purchase of the three vehicles described in this paragraph: (1) 2023 Utility Dry Van VIN 1UYVS2531P3676076, (2) 2023 Utility Dry Van VIN 1UYVS2533P3676077, and (3) 2023 Utility Dry Van VIN 1UYVS2535P3676078 (the "2022 Vehicles"). A true and correct copy of the 2022 Contract is attached to this Complaint and incorporated herein as "Exhibit H".

21.     Pursuant to the terms of February 2022 Contract, BHB was granted a security interest in the 2022 Vehicles.

4884-0167-7943, v. 1

22.    On or about February 28, 2022, Singh executed a document titled "Continuing Guaranty" dated February 28, 2022 (the "2022 Guaranty") whereby Singh guaranteed payment of all debts owed to BHB from Black Horse. A true and correct copy of the 2022 Guaranty is attached to this Complaint and incorporated herein as "Exhibit I".

23.    In consideration of the promises contained in the 2022 Contract and 2022 Guaranty, BHB loaned $180,125.00 to Black Horse.

24.    BHB perfected its security interest in the 2022 Vehicles by having its lien noted on the title of said vehicles. A true and correct copy of the title to the 2022 Vehicles (or proof of said titling provided by the appropriate titling agency) is attached to this Complaint and incorporated herein as "Exhibit J."

**Defaults Under the Contracts**

25.    Collectively, the September 9 Contract, September 15 Contract, 2021 Contract and 2022 Contract are referred herein as the "Contracts".

26.    BHB performed all of its obligations under the Contracts.

27.    Black Horse failed to make payments when due under the Contracts; specifically, it failed to make payments required by the Contracts as follows:

a.    September 9 Contract – Black Horse failed to make payments when due under the September 9 Contract, beginning with the payment due on or before March 1, 2023.

b.    September 15 Contract – Black Horse failed to make payments when due under the September 15 Contract, beginning with the payment due on or before March 1, 2023.

c.    2021 Contract – Black Horse failed to make payments when due under the 2021 Contract, beginning with the payment due on or before March 10, 2023.

4884-0167-7943, v. 1

d.  2022 Contract – Black Horse failed to make payments when due under the 2022 Contract, beginning with the payment due on or before March 1, 2023.

28.  As a result of Black Horse's failure to make payments when due under the Contracts, BHB accelerated amounts due under the Contracts and demanded possession of the vehicles described in Paragraphs 7, 11, 15 and 20 of this Complaint (collectively the "Vehicles"). A true and correct copy of the demand letters (hereinafter, the "Letters") made upon Black Horse and Singh is attached to this Complaint and incorporated herein as "Exhibit K".

29.  As of September 1, 2022, Black Horse owed in excess of $391,474.93 under the Contracts. In addition, interest under the Contracts accrues on a daily basis after September 1, 2022 and BHB has incurred attorneys' fees and costs of repossession.

30.  As of the filing date of this Complaint, Black Horse and Singh (collectively the "Defendants') have failed to deliver possession of the following five vehicles to BHB: (1) 2023 Utility Dry Van VIN 1UYVS2533P3676077, (2) 2023 Utility Dry Van VIN 1UYVS2535P3676078, (3) 2022 Hyundai Dry Van VIN 3H3V532KXNS018242 (4) 2022 Hyundai Dry Van VIN 3H3V532K8NS018241 and (5) 2021 Freightliner Cascadia VIN #3AKJHHDR8MSMC4785 (the "Unrecovered Vehicles")

31.  Based upon publicly available resources such as Blackbook, the total fair wholesale value of the Unrecovered Vehicles is $247,700.00, and said figure is broken down as follows:

a.  2022 Hyundai Dry Van VIN 3H3V532K8NS018241 – Estimated Value is $44,250.00

b.  2022 Hyundai Dry Van VIN 3H3V532KXNS018242 – Estimated Value is $44,250.00

c.  2023 Utility Dry Van VIN 1UYVS2533P3676077– Estimated Value is $44,250.00

4884-0167-7943, v. 1

    d.   2023 Utility Dry Van VIN 1UYVS2535P3676078 – Estimated Value is $44,250.00

    e.   2021 Freightliner Cascadia VIN #3AKJHHDR8MSMC4785 – Estimated Value is $70,700.00

32.    The Unreturned Vehicles are capable of being moved by Defendants across the United States via the highway and roadway system. Furthermore, as the Unreturned Vehicles are used by Defendants they may be damaged.

33.    Defendants' continued use of the Unreturned Vehicles is causing the value of the Unreturned Vehicles to depreciate, as wear and tear on any vehicle generally decreases its value.

**COUNT I**
**Detinue**

34.    BHB restates and by this reference incorporates the allegations of Paragraphs 1 through 33 as if fully stated herein.

35.    Based on the failure of Black Horse to make payments when required under the Contracts, BHB is lawfully entitled to immediate possession of the Unreturned Vehicles. (Section 5.2 of the Contracts).

36.    BHB made demand, via the statements contained in the Letters, upon Defendants for the return of the Unreturned Vehicles.

37.    Defendants failed to return the Unreturned Vehicles to BHB upon demand.

38.    BHB has a perfected security interest in the Unreturned Vehicles.

39.    BHB's right to possession of the Unreturned Vehicles is superior to that of Defendants.

40.    Upon information and belief, Black Horse and Singh are in possession of the Unreturned Vehicles.

41.    Black Horse and Singh's continued possession and use of the Unreturned Vehicles is wrongful.

4884-0167-7943, v. 1

WHEREFORE, BMO Harris Bank N.A. requests judgment in its favor and against the Defendants Black Horse Trans Inc. and Gurinderjit Singh asks this Court to enter an Order requiring Black Horse Trans Inc. and Gurinderjit Singh to deliver (1) 2023 Utility Dry Van VIN 1UYVS2533P3676077, (2) 2023 Utility Dry Van VIN 1UYVS2535P3676078, (3) 2022 Hyundai Dry Van VIN 3H3V532KXNS018242 (4) 2022 Hyundai Dry Van VIN 3H3V532K8NS018241 and (5) 2021 Freightliner Cascadia VIN #3AKJHHDR8MSMC4785 to BMO Harris Bank N.A., plus damages based on Black Horse Trans Inc. and Gurinderjit Singh's wrongful detention of the Unreturned Vehicles, plus attorneys' fees and court costs, and any other relief this Court deems just and proper.

## COUNT II
## Replevin

42.     BHB restates and by this reference incorporates the allegations of Paragraphs 1 through 41 as if fully stated herein.

43.     Based on the failure of Black Horse to make payments when required under the Contracts, BHB is lawfully entitled to immediate possession of the Unreturned Vehicles. (See Contracts, Section 5.2)

44.     BHB made demand, via the statements contained in the Letters, upon Defendants for the return of the Unreturned Vehicles to BHB.

45.     Defendants failed to return the Unreturned Vehicles to BHB upon demand.

46.     BHB's right to possession of the Unreturned Vehicles is superior to that of Defendants.

47.     The estimated value of the Unreturned Vehicles is $247,700.00.

48.     Defendants' continued possession and use of the Unreturned Vehicles is wrongful.

49.     The Unreturned Vehicles have not been taken for any tax, assessment or fine levied by virtue of any law of Illinois against the property of BMO Harris Bank N.A. or against it

individually, nor seized under any lawful process or against the goods and chattels of plaintiff subject to such lawful process, nor held by virtue of any order of replevin against BMO Harris Bank N.A.

50.     BHB claims the value of Unreturned Vehicles not delivered to the officer under the order for replevin entered by the court. BHB asks that an Order of Replevin issue and for judgment against Black Horse and Singh and requests possession of the Unreturned Vehicles and the value of the Unreturned Vehicles not delivered and damages for detention.

WHEREFORE, BMO Harris Bank N.A. respectfully asks this Court to enter judgment in replevin against Black Horse Trans Inc. and Gurinderjit Singh and requests entry of an order of replevin and possession of the (1) 2023 Utility Dry Van VIN 1UYVS2533P3676077, (2) 2023 Utility Dry Van VIN 1UYVS2535P3676078, (3) 2022 Hyundai Dry Van VIN 3H3V532KXNS018242 (4) 2022 Hyundai Dry Van VIN 3H3V532K8NS018241 and (5) 2021 Freightliner Cascadia VIN #3AKJHHDR8MSMC4785, and to authorize the United States Marshal to use all reasonable and necessary force to seize said Unreturned Vehicles wherever the Unreturned Vehicles may be found in the United States, the value of the Unreturned Vehicles not delivered and damages for detention, and other relief this Court deems just and equitable.

## COUNT III
## Injunctive Relief

51.     BHB restates and by this reference incorporates the allegations of Paragraphs 1 through 50 as if fully stated herein.

52.     BHB is likely to succeed on the merits of this case as it has demonstrated that a monetary default exists under all of the Contracts.

4884-0167-7943, v. 1

53.     The plain language of the Contracts provides that BHB is entitled to possession of the Unreturned Vehicles if a monetary default exists under the Contracts (See Contracts, Section 5.2).

54.     Defendants' continued use of the Unreturned Vehicles is causing immediate and irreparable harm to BHB, as Defendants' continued use of the Unreturned Vehicles will result in depreciation to the value of the Unreturned Vehicles, and the Unreturned Vehicles may be damaged as they travel on roads across the United States.

55.     While BHB is entitled to peacefully repossess the Unreturned Vehicles and is also seeking an Order of Replevin this case, injunctive relief against the Defendants is necessary to ensure that Unreturned Vehicles do not continue to be moved in an effort to frustrate BHB's right to possession of the Unreturned Vehicles and prevent damage and destruction of the Unreturned Vehicles.

        WHEREFORE, BMO Harris Bank N.A. respectfully asks this Court to enter preliminary and permanent injunctive relief  against Black Horse Trans Inc. and Gurinderjit Singh and order said Defendants to immediately cease use of the (1) 2023 Utility Dry Van VIN 1UYVS2533P3676077, (2) 2023 Utility Dry Van VIN 1UYVS2535P3676078, (3) 2022 Hyundai Dry Van VIN 3H3V532KXNS018242 (4) 2022 Hyundai Dry Van VIN 3H3V532K8NS018241 and (5) 2021 Freightliner Cascadia VIN #3AKJHHDR8MSMC4785, and to compel said Defendants to identify the location of said vehicles to BMO Harris Bank so that BMO Harris Bank N.A. may seize, or cause the United States Marshal to seize, said vehicles, and other relief this Court deems just and equitable.

## COUNT IV –
## BREACH OF CONTRACT

56.     BHB re-alleges and restates Paragraphs 1 through 55 of this Complaint as if fully rewritten herein.

57.     Black Horse agreed to the terms of the September 9 Contract (Ex. A) by executing the same.

58.     Based on the promises contained in the September 9 Contract, BHB loaned money to Black Horse and advanced those loan proceeds to fund Black Horse's purchase of the vehicle identified in the September 9 Contract.

59.     BHB performed all of its obligations under the September 9 Contract.

60.     Black Horse failed to make payments when due under the September 9 Contract, beginning with the payment due on or before March 1, 2023.

61.     As a result of Black Horse's failure to make payments when due under the September 9 Contract, BHB accelerated amounts due under the September 9 Contract.

62.     Black Horse breached September 9 Contract by failing to make payments when due.

63.     As of August 1, 2023, the amount due under the September 9 Contract was $85,635.09, said amount not including attorneys' fees, repossession fees and other costs expended by BHB.

64.     Pursuant to the terms of the September 9, Contract, Black Horse agreed to pay all attorneys' fees and expenses incurred in the event of a default under said contract. (Ex. A, Section 5.2)

65.     As a result of Black Horse's breach of the September 9 Contract, BHB has been damaged in amount greater than $85,635.09 as of August 1, 2023. Furthermore, interest will accrued on a daily basis pursuant to the terms of the Contract after August 1, 2023 and BHB has incurred additional expenses related to the repossession of the collateral securing said agreement.

        WHEREFORE, BMO Harris Bank N.A. respectfully asks this Court for the entry of a judgment against Black Horse Trans Inc. in favor of BMO Harris Bank N.A. in an amount of $85,635.09 plus per diem interest after August 1, 2023 through the date of judgment in this matter, plus attorneys' fees and costs, and other expenses incurred by BMO Harris Bank N.A. and any other relief this Court deems just and equitable.

## COUNT V – 
## BREACH OF CONTRACT

Page 11 of 17

66.     BHB re-alleges and restates Paragraphs 1 through 65 of this Complaint as if fully rewritten herein.

67.     Black Horse agreed to the terms of the September 15 Contract (Ex. C) by executing the same.

68.     Based on the promises contained in the September 15 Contract, BHB loaned money to Black Horse and advanced those loan proceeds to fund Black Horse's purchase of the vehicle identified in the September 15 Contract.

69.     BHB performed all of its obligations under the September 15 Contract.

70.     Black Horse failed to make payments when due under the September 15 Contract, beginning with the payment due on or before March 1, 2023.

71.     As a result of Black Horse's failure to make payments when due under the September 15 Contract, BHB accelerated amounts due under the September 15 Contract.

72.     Black Horse breached the September 15 Contract by failing to make payments when due.

73.     As of August 1, 2023, the amount due under the September 15 Contract was $87,268.78, said amount not including attorneys' fees, repossession fees and other costs expended by BHB.

74.     Pursuant to the terms of the September 15 Contract, Black Horse agreed to pay all attorneys' fees and expenses incurred in the event of a default under said contract. (Ex. C, Section 5.2)

75.     As a result of Black Horse's breach of the September 15 Contract, BHB has been damaged in amount greater than $87,268.78 as of August 1, 2023. Furthermore, interest will accrued on a daily basis pursuant to the terms of the contract on a daily basis after August 1, 2023 and BHB has incurred additional expenses related to the repossession of the collateral securing said agreement.

        WHEREFORE, BMO Harris Bank N.A. respectfully asks this Court for the entry of a judgment against Black Horse Trans Inc. in favor of BMO Harris Bank N.A. in an amount of $87,268.78 plus per diem interest after August 1, 2023, through the date of judgment in this matter,

4884-0167-7943, v. 1

plus attorneys' fees and costs, and other expenses incurred by BMO Harris Bank N.A. and any other relief this Court deems just and equitable.

### COUNT VI –
### BREACH OF CONTRACT

76.     BHB re-alleges and restates Paragraphs 1 through 75 of this Complaint as if fully rewritten herein.

77.     Black Horse agreed to the terms of the 2021 Contract (Ex. E) by executing the same.

78.     Based on the promises contained in the 2021 Contract, BHB loaned money to Black Horse and advanced those loan proceeds to fund Black Horse's purchase of the vehicles identified in the 2021 Contract.

79.     BHB performed all of its obligations under the 2021 Contract.

80.     Black Horse failed to make payments when due under the 2021 Contract, beginning with the payment due on or before March 10, 2023.

81.     As a result of Black Horse's failure to make payments when due under the 2021 Contract BHB accelerated amounts due under the 2021 Contract.

82.     Black Horse breached the 2021 Contract by failing to make payments when due.

83.     As of August 1, 2023, the amount due under the 2021 Contract was $53,014.25. Said amount does not include attorneys' fees and costs.

84.     Pursuant to the terms of the 2021 Contract, Black Horse agreed to pay all attorneys' fees and expenses incurred in the event of a default under said contract. (Ex. E, Section 5.2)

85.     As a result of Black Horse's breach of the 2021 Contract, BHB has been damaged in amount greater than $53,014.25 as of August 1, 2023. Furthermore, interest will accrue on a daily basis pursuant to the terms of the contract on a daily basis after August 1, 2023 and BHB has incurred additional expenses related to the repossession of the collateral securing said agreement.

4884-0167-7943, v. 1

WHEREFORE, BMO Harris Bank N.A. respectfully asks this Court for the entry of a judgment against Black Horse Trans Inc. in favor of BMO Harris Bank N.A. in an amount of $53,014.25 plus per diem interest after August 1, 2023, through the date of judgment in this matter, plus attorneys' fees and costs, and other expenses incurred by BMO Harris Bank N.A. and any other relief this Court deems just and equitable.

### COUNT VII – BREACH OF CONTRACT

86.     BHB re-alleges and restates Paragraphs 1 through 85 of this Complaint as if fully rewritten herein.

87.     Black Horse agreed to the terms of the 2022 Contract (Ex. H). by executing the same.

88.     Based on the promises contained in the 2022 Contract, BHB loaned money to Black Horse and advanced those loan proceeds to fund Black Horse's purchase of the vehicles identified in the 2022 Contract.

89.     BHB performed all of its obligations under the 2022 Contract.

90.     Black Horse failed to make payments when due under the 2022 Contract, beginning with the payment due on or before March 1, 2023.

91.     As a result of Black Horse's failure to make payments when due under the 2022 Contract, BHB accelerated amounts due under the 2022 Contract.

92.     Black Horse breached the 2022 Contract by failing to make payments when due.

93.     As of August 1, 2023, the amount due under the 2022 Contract was $165,556.81. Said amount does not include attorneys' fees and costs.

94.     Pursuant to the terms of the 2022 Contract, Black Horse agreed to pay all attorneys' fees and expenses incurred in the event of a default under said contract. (Ex. H, Section 5.2)

95.     As a result of Black Horse's breach of the 2022 Contract, BHB has been damaged in amount greater than $165,556.81 as of August 1, 2023. Furthermore, interest will accrue on a daily basis pursuant to the terms of the contract on a daily basis after August 1, 2023 and BHB has incurred additional expenses related to the repossession of the collateral securing said agreement.

WHEREFORE, BMO Harris Bank N.A. respectfully asks this Court for the entry of a judgment against Black Horse Trans Inc. in favor of BMO Harris Bank N.A. in an amount of $165,556.81 plus per diem interest after August 1, 2023, through the date of judgment in this matter, plus attorneys' fees and costs, and other expenses incurred by BMO Harris Bank N.A. and any other relief this Court deems just and equitable.

## COUNT VIII –
## BREACH OF GUARANTIES

96.     BHB re-alleges and restates Paragraphs 1 through 95 of this Complaint as if fully rewritten herein.

97.     Singh agreed to the terms of the 2021 Guaranty and 2022 Guaranty (collectively the "Guaranties") (Ex. F, I) by executing the same.

98.     Singh' promises contained in the Guaranties were given in consideration of BHB agreeing to loan money to Black Horse.

99.     Singh agreed to the terms of the Guaranties by executing the same.

100.    Singh agreed in the Guaranties to "fully perform pay and discharge" all of Black Horse's debts to BHB.

101.    Black Horse failed to make payments when due under the Contracts. As a result, BHB accelerated amounts due under the Contracts and demanded payment from Singh, pursuant to his obligations under the Guaranties.

102.    As of August 1, 2023, Black Horse owed  in excess of $391,474.93 under the Contracts. In addition, interest under accrues under the Contracts on a daily basis after August 1, 2023.

103.    Singh breached the terms of the Guaranties by failing to make payments when due under the Guaranties.

104.    As of August 1, 2023, BHB been damaged in an amount greater than $391,474.93 due to Singh's breach of the Guaranties. Furthermore, subsequent to August 1, 2023, BHB's damages have increased due to the accrual of interest under the Contracts and Guaranties, and collection costs, attorneys' fees, and repossession costs.

105.    Pursuant to the terms of the Guaranties, Singh agreed to pay attorneys' fees and costs associated with Singh's breach of the Guaranties.

WHEREFORE, BMO Harris Bank N.A. respectfully asks this Court for the entry of a judgment against Gurinderjit Singh in favor of BMO Harris Bank N.A. in an amount of $391,474.93 plus per diem interest on a contractual basis after August 1, 2023 through the date of judgment in this matter, plus attorneys' fees and costs, and other expenses incurred by BMO Harris Bank N.A. subsequent to August 1, 2023, and any other relief this Court deems just and equitable.

**RESPECTFULLY SUBMITTED,**

BMO HARRIS BANK N.A.

/s/Daniel S. Rubin
One of its attorneys

Scott C. Frost#6208276
Daniel S. Rubin-#6293669
Howard & Howard Attorneys PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, IL 60604-2461
(312) 456-3448
*Sfrost@howardandhoward.com*
*drubin@howardandhoward.com*

## **VERIFICATION**

I declare under penalty of perjury that the foregoing allegations of BMO Harris Bank N.A.'s Complaint are true and correct. Executed on August 15, 2023 in Grapevine, Texas.

*Bryan J. Schrepel*
_____
Name: Bryan J. Schrepel
Title: Litigation Specialist, BMO Harris Bank N.A.

4884-0167-7943, v. 1